Filed 2/23/24  Verceles v. Cal. Commission on Teacher Credentialing CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JUNNIE VERCELES, | B323426 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 22STCV02113) |
| CALIFORNIA COMMISSION ON TEACHER CREDENTIALING, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Affirmed.

Junnie Verceles, in propria persona, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris Knudsen; Senior Assistant Attorney General, Kelsey Linnett, Supervising Deputy Attorney General, and Paloma Carrero, Deputy Attorney General for Defendant and Respondent.

_____

Junnie Verceles, a teacher, was fired by the Los Angeles Unified School District (LAUSD) for mistreating his students. He sued the California Commission on Teacher Credentialing (CCTC), the state credentialing agency, for imposing a 14-day suspension of his teaching credential based on LAUSD's investigation. The trial court dismissed Verceles's lawsuit. Verceles appealed, representing himself. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Facts

#### A. LAUSD's Termination of Verceles and Report to the CCTC

Verceles was a middle school teacher for LAUSD in 2015, when allegations of misconduct were raised against him.[1] Verceles reportedly threw a book at a student, hit a student with an iPad, and used force against a student. Verceles was removed from his school and reassigned pending an investigation.

Following the investigation, LAUSD suspended and/or terminated Verceles for misconduct and reported its adverse action to the CCTC.[2]

#### B. The CCTC and Its Investigating Arm

The CCTC is an independent state agency that determines the professional standards for obtaining teaching credentials in California public schools. (Ed. Code, § 44225, subd. (d).) The CCTC has jurisdiction to investigate and, if warranted, to take

---

[1] Verceles currently holds a California teaching credential that is valid until April 1, 2025.

[2] The date of Verceles's termination from LAUSD is not clear from the record.

disciplinary action against credential holders.  (Ed. Code, §§ 44242.5, 44421.)  The CCTC is authorized to privately admonish or publicly reprove a credential holder, or revoke or suspend a teaching credential for immoral or unprofessional conduct, refusal to obey school district regulations, or unfitness for service. (Ed. Code, §§ 44421, 44440.)

The CCTC appoints the Committee of Credentials (Committee) to investigate allegations of misconduct by credential holders, and, if necessary, to recommend any adverse actions to be taken.  (*Earnest v. Commission on Teacher Credentialing* (2023) 90 Cal.App.5th 62, 70 (*Earnest*).)

The Committee's investigation may consist of three phases: " 'the preliminary review [citation], the initial review [citation], and the formal review.' "  (*Earnest, supra,* 90 Cal.App.5th at p. 68.)  If the investigation continues to the initial review phase, the credential holder is given notice that his or her fitness to hold a teaching credential is under review and an opportunity to provide written materials for the Committee's consideration.  (*Id.* at p. 69.)  If the investigation proceeds to the formal review phase, the credential holder may appear at the hearing, answer questions under oath, and the Committee may call witnesses to testify.  (*Id.* at p. 70.)  If the Committee finds probable cause, the credential holder may request an adjudicatory hearing before the Office of Administrative Hearings.  (*Ibid.*)  Otherwise, the Committee reports its probable cause findings and recommendations of any adverse actions to the CCTC, which may or may not adopt them.  (*Ibid.*)

3

### C. The CCTC's Suspension of Verceles's Teaching Credential

According to Verceles's first amended complaint, after learning of LAUSD's adverse action, the CCTC notified Verceles that he was the subject of an initial review of his fitness to hold a teaching credential. The notice included LAUSD's reports of the three incidents of alleged misconduct.

Verceles provided material to the CCTC "to clear his name" and advised that LAUSD's information "was biased against him," and "include[ed] incidents that were not thoroughly investigated, the omission of dates and names of witnesses making allegations, and student statements that were illegible or were not signed under penalty of perjury."

The Committee reviewed Verceles's responses, set a formal review, and "required" him to travel to Sacramento for a hearing. Prior to the hearing, the Committee "attempted to intimidate" Verceles by informing him of the potential adverse actions if the misconduct allegations were found true. Verceles submitted additional information, which he maintained supported his claims that both LAUSD and the CCTC engaged in corrupt and discriminatory practices.

At his formal review on September 11, 2019, the Committee failed to discuss "any of the exculpatory evidence or inaccuracies of the investigation that [Verceles] wanted [Committee members] to address and explain."

On September 20, 2019, the Committee recommended that Verceles's teaching credential be suspended for 14 days. Verceles requested the suspension be reconsidered; he never sought an adjudication hearing before the Office of Administrative Hearings. The Committee reviewed and upheld its suspension of

4

Verceles's teaching credential, which the CCTC enforced from March 8 through March 21, 2020.

## II.  Procedural Background

Verceles timely filed an administrative complaint of employment discrimination against the CCTC with the Department of Fair Employment and Housing.  He received a right-to-sue notice.  Verceles also filed a civil suit against LAUSD.

Representing himself, Verceles sued the CCTC for damages.  His verified first amended complaint alleged 11 separate causes of action against the CCTC:  Five causes of action for discrimination/retaliation in violation of the California Fair Housing and Employment Act (FEHA), one cause of action for intentional infliction of emotional distress, and various violations of the Education Code, California Constitution, the Bagley-Keene Act, and 42 United States Code (USC) sections 1981 and 1983.

The CCTC demurred to the first amended complaint in its entirety and to the separate causes of action.  Following a hearing, the trial court sustained the demurrer on all grounds raised by the demurrer.  The court dismissed the first amended complaint with prejudice.  This appeal followed.

**DISCUSSION**

Verceles contends the trial court erred in sustaining the demurrer to his first amended complaint without leave to amend.

## I.  Standard of Review

"In reviewing a trial court's order sustaining a demurrer without leave to amend, we must ask (1) whether the demurrer was properly sustained, and (2) whether leave to amend was properly denied." (*Schep v. Capital One, N.A.* (2017) 12

5

Cal.App.5th 1331, 1335.) The first question requires us to "independently evaluate whether the operative complaint states facts sufficient to state a cause of action" (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 34), and in so doing, we accept as true "all material facts properly pled" in that complaint (*Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 152). "The second question 'requires us to decide whether " ' "there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment." ' " ' " (*Schep, supra,* at p. 1335, quoting *McClain v. Sav-On Drugs* (2017) 9 Cal.App.5th 684, 695, affd. (2019) 6 Cal.5th 951.) Because Verceles proffers no suggestion on how to further amend his complaint and because we perceive no viable way to do so, the propriety of the dismissal order in this case turns entirely on whether his complaint states one or more viable causes of action.

## II. The First Amended Complaint Was Properly Dismissed

We independently agree with the trial court that Verceles's first amended complaint was properly dismissed on demurrer.

### A. Statutory Immunity

#### 1. Government Code section 818.4

Government Code section 818.4, which the trial court concluded was the basis of the CCTC's immunity, provides that a "public entity is not liable for an injury caused by the issuance, denial, suspension, or revocation of, or by the failure or refusal to issue, deny, suspend, or revoke, any permit, license, certificate, approval, order, or similar authorization." (Gov. Code, § 818.4; *Guzman v. County of Monterey* (2009) 178 Cal.App.4th 983, 997.) The statute applies to discretionary, not mandatory decisions. (See *Corona v. State* (2009) 178 Cal.App.4th 723, 733.) It is

6

undisputed the CCTC's determination of the status of a teaching credential is a discretionary act. The first amended complaint alleges neither a lack of immunity nor a mandatory duty the CCTC failed to discharge. All 11 of Verceles's claims arise from the CCTC's suspension decision and thus fall within the scope of immunity conferred by Government Code section 818.4. They were properly dismissed on demurrer.

### 2.    Government Code section 821.6

All of Verceles's claims are also barred by Government Code section 821.6. That statute provides that a public employee is not liable for injury caused by the employee's instituting or prosecuting any judicial or administrative proceeding within the scope of the employee's employment, even if the employee acts maliciously and without probable cause. (Gov. Code, § 821.) This immunity has been extended to public entity employers. (Gov. Code, § 815.2, subd. (b).) We agree with the trial court that because the gravamen of Verceles's 11 claims are that CCTC's investigations, hearings, and decisions were wrongful, discriminatory and/or retaliatory, this immunity applies. (*Ross v. San Francisco Bay Area Rapid Transit Dist.* (2007) 146 Cal.App.4th 1507, 1516.) The demurrer was properly sustained on this ground.

### B.    Failure to State a Claim

### 1.    Lack of standing

The first amended complaint asserts FEHA claims of age, color, race, national origin, sex, and gender discrimination; retaliation; and denial of employment due to a history of convictions. (See Gov. Code, §12921.) FEHA claims are predicated on an employment relationship. (*Vernon v. State of California* (2004) 116 Cal.App.4th 114, 123.)

7

To demonstrate the requisite employment relationship with the CCTC, Verceles first relies on the Ralph C. Dills Act (Dills Act) (Gov. Code, § 3512 et seq.) in his first amended complaint. The Dills Act established collective bargaining for state employees. (Gov. Code, § 3512 [purpose of the Dills Act is to "promote full communication between the state and its employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between the state and public employee organizations"].)

The CCTC, Verceles's only named defendant, is a state agency subject to the Dills Act.[3] (Ed. Code, § 44225, subd. (d).) Verceles alleges he is a state employee as defined by the Dills Act, which provides, in pertinent part: " 'State employee' means any civil service employee of the state, and the teaching staff of schools under the jurisdiction of the State Department of Education or the Superintendent of Public Instruction." (Gov. Code, § 3513, subd. (c).) However, Verceles fails to allege facts showing he is, or has ever been employed in a civil service position by the CCTC (or any other state agency), or by a school "under the jurisdiction of the State Department of Education or the Superintendent of Public Instruction."[4] While Verceles was

___

[3] LAUSD, by contrast, is a public-school employer subject to the Educational Employment Relations Act, Government Code section 3540 et seq., which established collective bargaining for California's public schools (K-12) and community colleges.

[4] This language appears to refer to institutions in the State Special Schools and Services Division. As a subdivision of the California Department of Education, the State Special Schools and Services Division furnishes services to deaf, hard-of-hearing, blind and visually impaired students in addition to offering LEA/district special education programs with assessment

8

an employee at the relevant times alleged, he was not an employee of the CCTC or the State of California.

Nonetheless, the first amended complaint asserts the CCTC and LAUSD were Verceles's joint employers.  " ' "Joint employment occurs when two or more persons [or entities] engage the services of an employee in an enterprise in which the employee is subject to the control of both." ' " (*Morales v. 22nd Dist. Agricultural Assn.* (2018) 25 Cal.App.5th 85, 94, fn. 14.)  To be a joint employer, an entity must have had the ability "(a) to exercise control over . . . wages, hours or working conditions, [or] (b) to suffer or permit [the] work, *or* (c) to engage, thereby creating a common law employment relationship."  (*Martinez v. Combs* (2010) 49 Cal.4th 35, 64.)

" ' "There is no magic formula for determining whether an organization is a joint employer.  Rather, the court must analyze 'myriad facts surrounding the employment relationship in question.'  No one factor is decisive." ' " (*St. Myers v. Dignity Health* (2019) 44 Cal.App.5th 301, 311.)  " 'Factors to be taken into account in assessing the relationship of the parties include payment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee,

---

services, technical assistance and staff development.  (See Ed. Code, §§ 59001, 59100.)

the skill required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment.' " "The most important factor is ' "the defendant's right to control the means and manner of the workers' performance." ' " (*St. Myers, supra,* at pp. 311–312, quoting *Vernon v. State of California, supra,* 116 Cal.App.4th at pp. 124–126.)

Verceles's first amended complaint alleges:  (1) The CCTC controls Verceles's wages:  "As [Verceles] holds a clear credential issued by the CCTC to get a paycheck, LAUSD also shares control over [Verceles's] wages as it determines when [he] gets paid and how much money [he] can earn."  (2) The CCTC controls the hiring of Verceles:  The CCTC granted Verceles a teaching credential allowing him to work for LAUSD; the school district will rely on the CCTC's Web site to confirm Verceles's credential; and the CCTC has "substantial direct and immediate control of the hiring, firing, and discipline of teachers."  The "CCTC and LAUSD share in the process as an employer of hiring [Verceles.]"  (3) The CCTC controls the disciplining of Verceles:  The "CCTC and LAUSD both share the responsibility of disciplining employees in order to maintain a standard of good conduct for teachers."  Verceles's discipline history and credential record can be viewed on the CCTC's Web site by prospective employers.  (4) The CCTC supervises Verceles's employment:  "[Verceles] was enrolled in a teacher credentialing program in order to obtain his clear teaching credential."

Verceles's allegations are insufficient to establish the CCTC and LAUSD were joint employers of Verceles. First, most of the allegations are based on a purported "shared" relationship between the two entities over Verceles's employment. Assuming LAUSD was Verceles's employer, whether the CCTC was Verceles's employer depends upon its relationship with Verceles (primarily the CCTC's right to control Verceles's work performance), not on the CCTC's relationship with LAUSD.

Second, nothing in the allegations or the record indicates the CCTC hired Verceles to teach, set the amount of his compensation or actually paid him for his services, provided him with on-the-job training, supplies or equipment, determined his work assignments, supervised his daily work performance, and had the authority to discipline, promote, transfer, or terminate Verceles. The first amended complaint fails to allege facts that, if true, would show the CCTC to have been Verceles's employer. In the absence of an employment relationship, Verceles lacks standing to sue the CCTC. Lack of standing is an appropriate basis for sustaining a demurrer. (*McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90.)

### 2. Claims subject to Government Claims Act

Pursuant to the Government Claims Act, a plaintiff seeking money damages against public entities and public employees acting within the scope of their employment is required to file an initial claim with the relevant public entity. (See Gov. Code, §§ 905, 950.2.) Failure to do so precludes the plaintiff from suing the relevant public entity and public employees and thus furnishes a ground for sustaining a demurrer. (Gov. Code, § 945.4; *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 737–738.) Here, Verceles's failure to plead he has complied with

11

the requirements of the Government Claims Act means he cannot state a cause of action for intentional infliction of emotional distress, and violations of Education Code section 44944, article I, section 7 of the California Constitution, and the Bagley-Keene Act.

### 3.    42 USC sections 1981 and 1983

The trial court properly sustained the demurrer to Verceles's alleged violations of 42 USC sections 1981 and 1983. Government entities which are an " 'arm of the state' " are immune from litigation under those statutes.  The reason is such entities are not persons within the meaning of sections 1981 and 1983.  (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 653–654.)

We have independently concluded the trial court did not err in this case.

## DISPOSITION

The order is affirmed.  The parties will bear their own costs on appeal.


                                        LUI, P. J.

We concur:



ASHMANN-GERST, J.



HOFFSTADT, J.